JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 7607

---

HARLEYSVILLE WORCESTER
INSURANCE COMPANY and ALEA NORTH
AMERICA INSURANCE COMPANY;

            Plaintiffs,

-against-

500 OCEAN APARTMENT CORP.; 501
REALTY CO.; ZAIDITH ROBINSON,
*Individually and As Natural Guardian of*
RIANNA ROBINSON; and MARIA
BERIGUETTE, *Individually and As Natural
Guardian of* ARIS MABEL CALDERON.

            Defendants.

ECF CASE

COMPLAINT
FOR
DECLARATORY JUDGMENT



---

    Plaintiffs Harleysville Worcester Insurance Company ("Harleysville") and ALEA North America Insurance Company ("ALEA"), by and through their undersigned attorneys, and by way of Complaint for Declaratory Judgment, allege as follows:

### NATURE OF ACTION

    1.    This is a civil action seeking a declaratory judgment on the application of insurance policies issued by Plaintiffs Harleysville and ALEA to Defendants 500 Ocean Apartment Corp. and 501 Realty Co. (collectively, "500 Ocean").

    2.    Harleysville and ALEA seek a declaration, pursuant to 28 U.S.C. § 2201(a), that they are not obligated under the terms of their subject insurance policies to defend or indemnify 500 Ocean with respect to claims made by Zaidith Robinson ("Zaidith"), Rianna Robinson ("Rianna"), Maria Beriguette ("Maria") and Aris Mabel Calderon ("Aris") in underlying actions filed against 500 Ocean in the Supreme Court of New York, in Kings and

Bronx Counties, captioned <u>Rianna Robinson, an infant by her mother and natural guardian, Zaidith Robinson, and Zaidith Robinson, individually v. 500 Ocean Apt. Corp., Dafonas Estates, Ltd., and 501 Realty Co.</u>, bearing index no. 9304/07 (the "Robinson Action") and <u>Aris Mabel Calderon, an infant by her mother and natural guardian, Maria Beriguette, and Maria Beriguette, individually v. 500 Ocean Apt. Corp. and Dafonas Estates, Ltd.</u>, bearing index no. 7628/07 (the "Calderon Action"), involving allegations of lead poisoning.

3. Harleysville and ALEA also seek a declaration that they are entitled to reimbursement for defense costs expended under a reservation of rights in connection with the defense of 500 Ocean in the Robinson and Calderon Actions.

### THE PARTIES

4. Harleysville is an insurance company domiciled in Massachusetts with its principal place of business at 120 Front Street, Suite 400, Worcester, Massachusetts.

5. ALEA is an insurance company domiciled in Connecticut with its principal place of business at 55 Capital Boulevard, Corporate Ridge, Rocky Hill, Connecticut.

6. Upon information and belief, 501 Realty Co. is a real estate company domiciled in New York with its principal place of business at 8302 Sixth Avenue, Suite 2A, Brooklyn, New York.

7. Upon information and belief, 500 Ocean Apartment Corporation is a real estate co-operative domiciled in New York with its principal place of business at 500 Ocean Avenue, Brooklyn, New York.

8. Upon information and belief, Zaidith and Rianna Robinson are individuals who reside at 500 Ocean Avenue, Apartment 2L, Brooklyn, New York (the "Property"). Zaidith

and Rianna are named as parties to this declaratory judgment action as interested parties, pursuant to 28 U.S.C. § 2201 and New York Insurance Law § 3420(d).

9. Upon information and belief, Maria Beriguette and Aris Calderon and are individuals who reside at 1765 Westchester Avenue, Apartment 1, Bronx, New York. Aris and Maria are named as parties to this declaratory judgment action as interested parties, pursuant to 28 U.S.C. § 2201 and New York Insurance Law § 3420(d).

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. § 2201(a) for the purpose of deciding an actual controversy between the parties herein.

11. This Court has diversity jurisdiction over this matter by virtue of 28 U.S.C. § 1332.

12. Venue is proper in the United States District Court for the Southern District of New York by virtue of 28 U.S.C. § 1391(a).

## THE ROBINSON ACTION

13. On or about March 19, 2007, Zaidith, individually and as natural guardian of Rianna, filed the Robinson Action.

14. The Robinson Action seeks damages in connection with Rianna's alleged ingestion and inhalation of lead paint chips and lead-based dust during her residence at the Property since her birth on September 28, 2001.

15. Harleysville and ALEA have defended 500 Ocean against the allegations in the Robinson Action under a full and complete reservation of their rights as set forth in letters dated April 18, 2007 and April 30, 2007, respectively.

## THE CALDERON ACTION

16. On or about February 6, 2007, Maria, individually and as natural guardian of Aris, filed the Calderon Action.

17. The Calderon Action seeks damages in connection with Aris' alleged ingestion and inhalation of lead paint chips and lead-based dust during her residence at the Property between July 2001 and December 2006.

18. Harleysville and ALEA have defended 500 Ocean against the allegations in the Calderon Action under a full and complete reservation of their rights as set forth in letters dated March 28, 2007 and April 26, 2007, respectively.

## THE INSURANCE POLICIES IN DISPUTE

### The Harleysville Policy

19. Harleysville issued a deluxe business owners policy to 500 Ocean, bearing policy number BO-3E2862, for annual policy periods from September 1, 2000 to September 1, 2003 (the "Harleysville Policy").

20. Pursuant to the relevant portion of the liability coverage section of the Harleysville Policy, Harleysville "will pay those sums that the insured [500 Ocean] becomes legally obligated to pay as damages because of 'bodily injury'. . . to which this insurance applies."

21. The Harleysville Policy, in relevant part, "applies only: (1) To 'bodily injury'... : (a) That occurs during the policy period; and (b) That is caused by an 'occurrence.'"

22. The Harleysville Policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

4

23. The Harleysville Policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

### The ALEA Policy

24. ALEA issued a commercial package policy to 500 Ocean, bearing policy number CPP-2001779-00, for a policy period from September 1, 2003 to June 20, 2004 (the "ALEA Policy").

25. Pursuant to the relevant portion of the liability coverage section of the ALEA Policy, ALEA "will pay those sums that the insured [500 Ocean] becomes legally obligated to pay as damages because of 'bodily injury' ... to which this insurance applies."

26. The ALEA Policy, in relevant part, "applies to 'bodily injury' . . . only if: (1) The 'bodily injury' . . . is caused by an 'occurrence' . . . ; and (2) The 'bodily injury' . . . occurs during the policy period."

27. The ALEA Policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

28. The ALEA Policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

### RIANNA'S BLOOD LEAD LEVELS

29. The United States Center for Disease Control ("CDC") recommends that public health action be taken when children have blood-lead levels of 10 micrograms per deciliter ("ug/dL") or higher.

30. Upon information and belief, on or about July 22, 2004, Rianna had a blood test indicating a lead level of 3 ug/dL.

31. Upon information and belief, on or about September 20, 2005, Rianna had a blood test indicating a lead level of 3 ug/dL.

32. Upon information and belief, on or about November 4, 2005, Rianna had a blood test indicating a lead level of 41 ug/dL, which was her first blood test indicating lead levels in excess of 10 ug/dL.

33. Upon information and belief, on or about November 9, 2005, Rianna had a blood test indicating a lead level of 25 ug/dL.

## ARIS' BLOOD LEAD LEVELS

34. Upon information and belief, on or about February 6, 2002, Aris had a blood test indicating a lead level of 3.3 ug/dL.

35. Upon information and belief, on or about August 12, 2005, Aris had a blood test indicating a lead level of 13 ug/dL, which was her first blood test indicating lead levels in excess of 10 ug/dL.

36. Upon information and belief, on or about August 24, 2005, Aris had a blood test indicating a lead level of 16 ug/dL.

37. Upon information and belief, on or about August 31, 2005, Aris had a blood test indicating a lead level of 12 ug/dL.

## FIRST COUNT
(No "Occurrence" During a Harleysville Policy Period as to the Robinson Action)

38. Harleysville repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth at length herein.

39. 500 Ocean is entitled to coverage for the Robinson Action under the Harleysville Policy only if it can prove that "bodily injury" caused by an "occurrence" took place during a Harleysville policy period, as those terms are defined in the Harleysville Policy.

40. Upon information and belief, prior to the expiration of the last Harleysville policy, September 1, 2003, Rianna did not have blood-lead levels in excess of 10 ug/dL, the level at which the CDC recommends public health action be taken.

41. Rianna did not sustain any "bodily injury" from alleged exposure to lead at the Property during a Harleysville policy period.

42. The claims for the Robinson Action are therefore not covered under the Harleysville Policy because there is no "bodily injury" caused by an "occurrence" during a Harleysville policy period.

43. Accordingly, Harleysville owes no duty to defend and/or indemnify 500 Ocean for the claims asserted in the Robinson Action, and is entitled to a declaration as such.

**SECOND COUNT**
**(No "Occurrence" During a Harleysville Policy Period as to the Calderon Action)**

44. Harleysville repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth at length herein.

45. 500 Ocean is entitled to coverage for the Calderon Action under the Harleysville Policy only if it can prove that "bodily injury" caused by an "occurrence" took place during a Harleysville policy period, as those terms are defined in the Harleysville Policy.

46. Upon information and belief, prior to the expiration of the last Harleysville policy, September 1, 2003, Aris did not have blood-lead levels in excess of 10 ug/dL, the level at which the CDC recommends public health action be taken.

47. Aris did not sustain any "bodily injury" from alleged exposure to lead at the Property during a Harleysville policy period.

48. The claims for the Calderon Action are therefore not covered under the Harleysville Policy because there is no "bodily injury" caused by an "occurrence" during a Harleysville policy period.

49. Accordingly, Harleysville owes no duty to defend and/or indemnify 500 Ocean for the claims asserted in the Calderon Action, and is entitled to a declaration as such.

### THIRD COUNT
(No "Occurrence" During an ALEA Policy Period as to the Robinson Action)

50. ALEA repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth at length herein.

51. 500 Ocean is entitled to coverage for the Robinson Action under the ALEA Policy only if it can prove that "bodily injury" caused by an "occurrence" took place during the ALEA policy period, as those terms are defined in the ALEA Policy.

52. Upon information and belief, prior to the expiration of the last ALEA policy, June 20, 2004, Rianna did not have blood-lead levels in excess of 10 ug/dL, the level at which the CDC recommends public health action be taken.

53. Rianna did not sustain any "bodily injury" from alleged exposure to lead at the Property during the ALEA policy period.

54. The claims for the Robinson Action are therefore not covered under the ALEA Policy because there is no "bodily injury" caused by an "occurrence" during the ALEA policy period.

55. Accordingly, ALEA owes no duty to defend and/or indemnify 500 Ocean for the claims asserted in the Robinson Action, and is entitled to a declaration as such.

### FOURTH COUNT
(No "Occurrence" During an ALEA Policy Period as to the Calderon Action)

56. ALEA repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth at length herein.

57. 500 Ocean is entitled to coverage for the Calderon Action under the ALEA Policy only if it can prove that "bodily injury" caused by an "occurrence" took place during the ALEA policy period, as those terms are defined in the ALEA Policy.

58. Upon information and belief, prior to the expiration of the last ALEA policy, June 20, 2004, Aris did not have blood-lead levels in excess of 10 ug/dL, the level at which the CDC recommends public health action be taken.

59. Aris did not sustain any "bodily injury" from alleged exposure to lead at the Property during the ALEA policy period.

60. The claims for the Calderon Action are therefore not covered under the ALEA Policy because there is no "bodily injury" caused by an "occurrence" during the ALEA policy period.

61. Accordingly, ALEA owes no duty to defend and/or indemnify 500 Ocean for the claims asserted in the Calderon Action, and is entitled to a declaration as such.

### FIFTH COUNT
**(The Harleysville and ALEA Policies Do Not Provide Coverage for
the Punitive Damages Claims Asserted in the Robinson and Calderon Actions)**

62. Harleysville and ALEA repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth at length herein.

63. The Robinson and Calderon Actions seek punitive damages due to the alleged wanton and reckless conduct of 500 Ocean.

64. The Harleysville and ALEA Policies do not provide coverage for punitive damages.

65. Accordingly, Harleysville and ALEA do not have a duty to defend and/or indemnify 500 Ocean for the punitive damages sought in the Robinson and Calderon Actions, and are entitled to a declaration as such.

### PRAYER FOR RELIEF

**WHEREFORE**, Harleysville and ALEA demand judgment and respectfully request that this Court adjudge and declare the following:

(A) that Harleysville and ALEA have no obligation pursuant to the Harleysville and ALEA Policies to pay any costs associated with the Robinson and Calderon Actions, including, but not limited to, any defense costs and/or expenses; and

(B) that Harleysville and ALEA have no obligation to indemnify or contribute to the indemnification of 500 Ocean in the Robinson and Calderon Actions; and

(C) that Harleysville and ALEA are entitled to reimbursement of any defense costs and/or expenses already paid on behalf of 500 Ocean including, but not limited to, costs incurred in defending the Robinson and Calderon Actions, which were expended by Harleysville and ALEA under a reservation of rights and subject to reimbursement; and

(D) that Harleysville and ALEA are entitled to any further relief which the Court deems to be just and equitable.

RIKER, DANZIG, SCHERER,
    HYLAND & PERRETTI LLP
Attorneys for Plaintiffs,
Harleysville Worcester Insurance Company and
ALEA North America Insurance Company

By: _____
       LANCE J. KALIK (LK-4677)

Dated: August 28, 2008

## LOCAL CIV. RULE 1.6 CERTIFICATION

I hereby certify that the matter in controversy is not, to my knowledge, the subject of any other pending action or arbitration proceeding except for the related proceedings entitled <u>Rianna Robinson, et al. v. 500 Ocean Apt. Corp.</u>, under index number 9304/07, which is currently pending before the Supreme Court of the State of New York, County of Kings; and <u>Aris Mabel Calderon, an infant by her mother and natural guardian, Maria Beriguette, and Maria Beriguette, individually v. 500 Ocean Apt. Corp. and Dafonas Estates, Ltd.</u>, under index no. 7628/07, which is currently pending before the Supreme Court of the State of New York, Bronx County.

RIKER, DANZIG, SCHERER,
HYLAND & PERRETTI LLP

BY: _/s/ Lance J. Kalik_
LANCE J. KALIK (LK-4677)

Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, NJ 07962-1981
(973) 538-0800

-and-

500 Fifth Avenue
Suite 4920
New York, New York 10110
(212) 302-6574

Attorneys for Plaintiffs,
Harleysville Worcester Insurance Company
   and
ALEA North America Insurance Company

Dated:  August 28, 2008